Opinion filed August 21, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00248-CV

_____

## CLIRESSA ELAANE BROWN, Cliressa

## V.

## RONALD PETER BROWN, JR., Ronald

**On Appeal from the 266th District Court**
**Erath County, Texas**
**Cause No. CV31344**

## M E M O R A N D U M   O P I N I O N

After a bench trial, the trial court granted a divorce, awarded custody of the children, and dissolved the marriage between Cliressa Elaane Brown and Ronald Peter Brown, Jr. The trial court took under advisement child support and health insurance, spousal maintenance, and property division matters. A short time later, the trial court determined child support obligations, awarded spousal maintenance, divided the couple's assets and liabilities, and entered a final judgment. In five issues on appeal, Cliressa, Cliressa Brown, challenges the judgment of the trial

court on (1) the denial of her objection to the trial judge, (2) the award of child support, (3) the award of spousal maintenance, (4) the division of property, and (5) Ronald's use of community funds to pay his attorney's fees. We affirm.

I. *Evidence at Trial*

Cliressa and Ronald married on June 17, 1998. On September 29, 2011, Ronald filed an original petition for divorce. In response, Cliressa answered and filed a counter-petition for divorce. On May 15, 2012, the Honorable Donald R. Jones held a bench trial on their respective petitions.

Ronald testified that he and Cliressa had one adult child and three minor children.[1] Shortly after the couple's first child was born in 1992, Ronald asked Cliressa to marry him, but she refused. Ronald then moved to Tennessee and began working as a mechanical planner and field engineer. Cliressa and Ronald later reconciled, and Ronald briefly moved back to Texas in 1995. Because Ronald made substantially less money working in Texas, he and Cliressa decided that he would go back to work "on the road."

Cliressa and Ronald eventually married in 1998 but continued to live apart. Over the course of the next decade, Cliressa cared for the couple's children in Texas while Ronald worked in Tennessee, Michigan, Wisconsin, Ontario, Florida, and Arizona. During the time that he was away, Ronald sent Cliressa $4,000 every two weeks until 2009, and from then on, $3,700 every two weeks.

Ronald began working in Florida again in 2011 and was working there at the time of the trial. Ronald explained that he worked twelve hours a day, six to seven days a week. Ronald's income tax return showed that he made a gross income of $178,901.75 in 2011, and Ronald stated that he was making a comparable income at the time of the trial. Ronald noted that he and Cliressa had substantial marital debts, including the mortgage on their house in Texas and unpaid balances on two

---

[1]Cliressa does not challenge the trial court's order as to custody and visitation of the children.

vehicles and several credit cards. Ronald asked the court to order the sale of the couple's property in Texas in order to help pay the marital debts.

Ronald claimed that Cliressa refused to move with their children to any of his locations. Ronald also claimed that neither Cliressa nor his children ever visited him while he was working away from them. On cross-examination, Ronald recalled that Cliressa once came to see him in Ontario and brought the couple's two oldest children. Ronald stated that he had felt alienated from his wife since 2004 and that she only called him when she needed money. Ronald noted that he and Cliressa had not had sexual relations since shortly after the birth of their last child and that Cliressa had refused his attempts to initiate sexual relations after that point.[2]

Ronald admitted that he had been having sexual relations with another woman since 2006 or 2007.[3] Ronald stated that he did not tell Cliressa about the affair.

Cliressa testified that, although she received over $90,000 each year from Ronald, she struggled financially. Cliressa stated that she does not travel or spend money on herself and that she cuts her own hair and her children's hair to save money. Cliressa explained that she began working as a waitress in a soda shop in January 2012. Cliressa noted that she was working approximately twenty hours a week, making $7.25 an hour. Cliressa further noted that her current job was the first job she had had in ten years and that it was the only one she could find. Cliressa stated that she expected her monthly expenses after the divorce to be $8,000 and asked the court to award her spousal maintenance for a term of five

---

[2]The parties disagreed as to what year their last sexual encounter occurred. Ronald believed that he last had sex with his wife in 2004, and Cliressa claimed that the encounter occurred in 2006.

[3]Ronald initially testified that the affair began in 2007 but later stated that it began in late 2006. In his responses to Cliressa's interrogatories, Ronald indicated that the affair began in 2005.

years and $3,000 in monthly child support. Cliressa also asked the court to award her attorney's fees and the marital residence.

Cliressa claimed that Ronald wasted money on extravagances, such as alcohol and trips to Las Vegas. Cliressa also claimed that Ronald never asked her or the children to come see him and that she would have visited him more frequently had she been invited. Cliressa stated that she had not had sexual relations with Ronald since 2006. Cliressa noted that Ronald tried to initiate sexual relations after that point but that she refused. Cliressa explained that she was not aware of her husband's affair until after he filed for divorce.

At the conclusion of the trial, Judge Jones granted the parties' divorce and entered interlocutory orders regarding the custody of the couple's minor children. Judge Jones took the other matters, including the amount of child support, the division of the couple's property, and the question of spousal maintenance, under advisement.

On May 25, 2012, Judge Jones sent the parties a letter that ordered Ronald to pay Cliressa $1,000 in monthly maintenance for a term of one year and $2,250 in monthly child support. The letter also ordered the sale of the couple's marital residence and other real property in order to satisfy the debts of the marriage. Judge Jones later entered a final decree of divorce that dissolved the parties' marriage and confirmed his previous orders.

## II. *Issues Presented*

Cliressa asserts in five issues that (1) the final decree of divorce is voidable because it was entered by a visiting judge subject to an objection under Section 74.053 of the Texas Government Code, (2) the trial court improperly set child support at a rate below the guidelines provided by Chapter 154 of the Texas Family Code, (3) the trial court established spousal maintenance at an arbitrary amount and time without regard for the provisions of Chapter 8 of the Texas

4

Family Code, (4) the property division was neither just nor right, and (5) the trial court's decision to allow Ronald to pay his attorney's fees using community property funds was an unfair and unjust division of the community property.

### III. *Standard of Review*

The question of whether the assignment of a judge is subject to objection is based solely on the interpretation of the applicable rules and statutes. A trial court's construction of a statute is reviewed de novo. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009).

The trial court has broad discretion in setting the amount of child support, and a child support order will not be disturbed on appeal unless the complaining party shows a clear abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). A trial court's decision to award spousal maintenance is also reviewed for an abuse of discretion. *Tellez v. Tellez*, 345 S.W.3d 689, 691 (Tex. App.—Dallas 2011, no pet.). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

We will not reverse a property division unless the complainant shows that the trial court clearly abused its discretion. *In re Marriage of Taylor*, 992 S.W.2d 616, 620 (Tex. App.—Texarkana 1999, no pet.). We examine the issue through application of a two-pronged inquiry that asks (1) whether the trial court had sufficient information upon which it could exercise its discretion and (2) whether the trial court abused its discretion by making a division of the property that was manifestly unjust or unfair. *Evans v. Evans*, 14 S.W.3d 343, 346 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

Legal and factual sufficiency issues are not independent grounds of error but are relevant factors to consider in determining whether an abuse of discretion has

occurred. *Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex. App.—Austin 1997, no pet.).

IV. *Analysis*

A. *Objection to Assigned Judge*

Cliressa contends in her first issue that the final decree of divorce is voidable because it was entered by a visiting judge whose assignment she objected to under Section 74.053 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 74.053 (West 2013). Section 74.053 provides that, if a party to a civil case files a timely objection to a judge's assignment, the judge shall not hear the case. *See id.*

On June 30, 2012, after conducting the trial but prior to signing the decree, Judge Jones retired from his position as judge of the 266th District Court of Erath County. On July 2, 2012, Judge Jones was assigned, in accordance with Section 74.056 of the Texas Government Code, to serve as a judge of the 266th District Court for a period of five days. On July 3, 2012, Judge Jones issued a final decree of divorce that dissolved the parties' marriage and confirmed the orders contained in his May 25 letter.

Judge Jones heard and decided this case prior to the date he retired. While serving as an assigned judge in this case, Judge Jones performed only the "ministerial act" of entering the final decree of divorce. *See Dunn v. Dunn*, 439 S.W.2d 830, 832 (Tex. 1969) (stating that "the entry of a trial judgment is only a ministerial act."). Because Judge Jones did not hear any portion of this case while serving as an assigned judge, we hold that Cliressa's objection did not prevent Judge Jones from issuing the final decree of divorce. *See* GOV'T § 74.053(b); *Turner v. Turner*, No. 11-10-00192-CV, 2012 WL 3115155, at *4 (Tex. App.—Eastland July 31, 2012, pet. denied) (mem. op.). We overrule Cliressa's first issue.

*B. Child Support*

Cliressa claims in her second issue that the trial court improperly set the amount of child support below the guidelines set out in Chapter 154 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 154.125(b) (West 2014). Section 154.125(b) of the Texas Family Code provides child support guidelines that are to be applied by the trial court in situations in which the obligor's monthly net resources are not greater than $7,500. *Id.* § 154.125(a). In situations where the obligor's monthly net resources are greater than $7,500, the court is to apply the percentage guidelines to only that portion of the obligor's net resources that does not exceed $7,500. *Id.* The court may order additional amounts of child support as appropriate, depending on the income of the parties and the proven needs of the child. *Id.*

We begin our review of the child support order in this case by determining if the order complied with the applicable guidelines. Based on the guidelines set out in Section 154.125(b), Ronald, being an obligor with three children, is required to pay child support in an amount equivalent to 30% of his net resources. *Id.* § 154.125(b). Evidence adduced at trial showed that Ronald had a monthly net income of approximately $10,000. According to Section 154.126(a), the trial court was permitted to apply the percentage set by the guidelines to only $7,500 of Ronald's monthly net resources. *Id.* § 154.126(a). Thirty percent of $7,500 is $2,250, and $2,250 is the amount of monthly child support the trial court ordered Ronald to pay. Therefore, we find that the trial court followed the guidelines set out in Chapter 154 of the Texas Family Code when it set child support in this case.

We now turn to the question of whether Cliressa was entitled to child support above the amount set by the statutory guidelines. *See id.* Cliressa claims that she was entitled to additional child support under Section 154.126(a) because

of (1) the gross disparity in her and Ronald's income and (2) the high amount of monthly expenses she endures in caring for her children.

Section 154.126(a) states that a trial court may require an obligor to pay child support above the level set by the guidelines as appropriate, taking into consideration the parties' income and the children's proven needs. Cliressa interprets the statute's use of the phrase "the parties' income" to mean that a court should consider the disparity of the parents' income when making a determination under Section 154.126(a). We interpret "the parties' income" as used in this section to simply refer to the amount of income each parent has to contribute to the care of his or her children.

We next move to Cliressa's claim that she is entitled to child support above the amount set by the guidelines because she established that her children's proven monthly needs amount to $8,807. The trial court determines the needs of a child on a case-by-case basis by following the paramount guiding principle: the "best interests" of the child. *Scott v. Younts*, 926 S.W.2d 415, 421 (Tex. App.—Corpus Christi 1996, writ denied). Although a child's needs are not limited to "the bare necessities of life," a trial court is not permitted to consider "lifestyle" evidence in determining whether an obligor should be required to pay additional child support. *See Rodriguez v. Rodriguez*, 860 S.W.2d 414, 417 n.3 (Tex. 1993) (holding that the "needs of the child" are not determined by the parents' ability to pay or the lifestyle of the family); *In re Marriage of Thurmond*, 888 S.W.2d 269, 278 (Tex. App.—Amarillo 1994, writ denied) (recognizing that "lifestyle" could not be considered when awarding child support beyond the presumptive level in cases where the obligor's income rose above the statutorily designated income level).

Cliressa testified that her children attend public school and suffer from no disabilities. Although Cliressa claimed it cost over $8,000 a month to raise her three children, she did not support that claim with an itemized list of the children's

8

expenses. *See Lide v. Lide*, 116 S.W.3d 147, 158 (Tex. App.—El Paso 2003, no pet.) (stating that a child's needs must be supported by evidence and must be explained or itemized). The monthly budget Cliressa submitted into evidence showed only the general expenses of her entire family. Thus, the budget did not establish the proven needs of the children. *See Lide*, 116 S.W.3d at 158 (recognizing that living expenses of mother that was to receive child support were required to be segregated from the proven needs of her children).

Cliressa testified that she wanted to continue to live in her home and be able to take her children to and from school and attend all of their extracurricular activities. The trial court was not permitted to consider these "lifestyle" preferences when deciding if Ronald should be required to pay additional child support. *See Rodriguez*, 860 S.W.2d at 417 n.3; *Thurmond*, 888 S.W.2d at 278.

We hold that Cliressa has failed to show that the proven needs of her children require $8,807 a month. Even if Cliressa had established that the proven needs of her children rose to that amount, it was within the trial court's discretion to refuse to award child support above the amount set by the guidelines. *See* FAM. § 154.126(a); *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 581 (Tex. App.—Houston [1st Dist.] 1997, pet. denied) (noting that court was permitted to deny request for additional child support based on a finding that evidence was unpersuasive or that the amounts allocated to the child were excessive). We hold that the trial court did not abuse its discretion when it declined to require Ronald to pay child support in excess of the amount set by the guidelines provided in Section 154.125(b). *See* FAM. § 154.125(b). We overrule Cliressa's second issue.

### C. Spousal Maintenance

Cliressa complains in her third issue that the trial court set her monthly spousal maintenance award at an arbitrary amount for an arbitrary period of time. Cliressa argues that many factors, including Ronald's long-standing affair and

spending habits, the disparity in the parties' incomes, the parties' decision that she should be a stay-at-home mother, and the length of the marriage, show that she should have been awarded $2,500 monthly maintenance for a term of five years.

The purpose of spousal maintenance is to provide temporary and rehabilitative support for a spouse whose ability to support herself has eroded over time while engaged in homemaking activities and whose capital assets are insufficient to provide support. *Deltuva v. Deltuva*, 113 S.W.3d 882, 888 (Tex. App.—Dallas 2003, no pet.). With the exception of situations not applicable here, a trial court may order spousal maintenance in a marriage that lasted ten years or more if the spouse seeking maintenance lacks sufficient property to provide for his or her minimum reasonable needs. *See* FAM. § 8.051(2) (West Supp. 2013). Assessing the minimum reasonable needs of a particular individual is a fact-specific determination that should be made by the trial court on a case-by-case basis. *In re Marriage of Hale*, 975 S.W.2d 694, 698 (Tex. App.—Texarkana 1998, no pet.).

The record in this case shows that Cliressa attended college for three years and completed massage therapy school. Sometime around the birth of her second child, Cliressa chose to quit her job and be a stay-at-home mother. Cliressa served her family as a homemaker for the ten years that followed. Cliressa testified that she was forty-two years old and that she worked approximately twenty hours a week as a waitress, making $7.25 an hour. Cliressa testified that she was interested in taking medical transcription classes that would allow her to obtain a job paying $1,500 or $2,000 a month. The trial court was authorized to consider Cliressa's testimony in determining the amount of maintenance she was to receive. *See Wright v. Wright*, 280 S.W.3d 901, 908 (Tex. App.—Eastland 2009, no pet.) (stating that the trial court, as the trier of fact, is "the sole judge of the credibility of the witnesses and the weight to be given their testimony").

10

The monthly budget Cliressa adduced as evidence failed to itemize her individual living expenses and, instead, showed only the general expenses of her entire family. Cliressa claimed that her family's monthly expenses equaled $8,807. Deducting Cliressa's monthly income of approximately $400 and monthly child support of $2,250 from her claimed expenses leaves a shortfall of $6,157. Cliressa argues that this shortfall entitles her to an increase in monthly maintenance. We disagree. Just because Cliressa's maintenance and child support payments are insufficient to satisfy her expenses does not automatically entitle her to a larger maintenance award. *See Tellez*, 345 S.W.3d at 692 (rejecting wife's argument that her maintenance should be increased because it was insufficient to eliminate her monthly shortfall). While courts frequently consider a party's monthly expenses, income, and any shortfall in determining whether a spousal maintenance award is proper, there is no requirement that a spousal maintenance award eliminate the shortfall. *See* FAM. § 8.051; *Deltuva*, 113 S.W.3d at 888 ($2,757 monthly shortfall; $650 monthly maintenance); *Yarbrough v. Yarbrough*, 151 S.W.3d 687, 692 (Tex. App.—Dallas 2011, no pet.) ($2,600 monthly shortfall; $1,329 monthly maintenance).

We also reject Cliressa's claim that the trial court should have extended the duration of her maintenance award. Unless a specified exception applies, a trial court is required to limit the duration of a maintenance order "to the shortest reasonable period that allows the spouse seeking maintenance to earn sufficient income to provide for the spouse's minimum reasonable needs" by obtaining appropriate employment or developing an appropriate skill. FAM. § 8.054(a)(2); *see Amos v. Amos*, 79 S.W.3d 747, 750 (Tex. App.—Corpus Christi 2002, no pet.). Based on the evidence presented, the trial court could have reasonably concluded that a year's worth of monthly maintenance payments was sufficient time for

11

Cliressa to obtain appropriate employment or develop an appropriate skill to support herself.

We find that the trial court did not abuse its discretion when it set Cliressa's monthly maintenance award at $1,000 for a term of one year. The trial court's decision complies with the applicable statute, and there was some evidence to support it. *See In re Marriage of McFarland*, 176 S.W.3d 650, 656 (Tex. App.— Texarkana 2005, no pet.) (stating that "the trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision"). We overrule Cliressa's third issue.

*D. Property Division*

Cliressa contends in her fourth issue that the trial court's property division was neither just nor right. *See* FAM. § 7.001 (West 2006) ("In a decree of divorce or annulment, the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage."). Cliressa argues that she should have been awarded a larger share of the community estate given Ronald's long-standing affair and his excessive spending.

The trial court did not prepare findings of fact in this case, and the divorce decree does not provide values for any of the assets or debts assigned to each party. As the challenger of the court's division of the parties' property, it was Cliressa's responsibility to provide us with the evidence necessary for us to review the property division. *See Taylor*, 992 S.W.2d at 620 ("A presumption arises on appeal that the trial court correctly exercised its discretion in dividing property in a divorce proceeding, and the burden rests on the Cliressa to show from the record that the division was so disproportionate, and thus unjust and unfair, as to constitute an abuse of discretion."). When findings of fact and conclusions of law are not requested or filed, the judgment of the trial court must be affirmed if it can

12

be upheld on any legal theory that finds support in the evidence. *Balboa Ins. Co. v. Snyder Consol. Indep. Sch. Dist.*, 574 S.W.2d 879, 880 (Tex. Civ. App.—Eastland 1978, no writ) (citing *Bishop v. Bishop*, 359 S.W.2d 869, 871 (Tex. 1962)). If the trial court files no findings of fact and conclusions of law, all findings necessary to the court's judgment, if supported by the record, will be implied. *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 251 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).

Cliressa claims that the trial court awarded Ronald $10,000 more of the community estate than it awarded her. She does not point out where she thinks the court awarded more property. We note that, if the items listed for assets and liabilities in Trial Exhibit "A" are divided as the trial court ordered in the final judgment and are given the values attributed to them by Ronald, the difference between Cliressa's net share and Ronald's net share is approximately $10,000. The trial court has wide discretion in dividing the estate of the parties, and that division should be corrected on appeal only when an abuse of discretion has been shown. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981) (citing *Hedtke v. Hedtke*, 248 S.W. 21 (Tex. 1923)). "These cases further indicate that the trial court may consider such factors as the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages, size of separate estates, and the nature of the property." *Id.* at 699.

We note that the trial court awarded the Honda vehicle, which was used by the parties' adult daughter, to Ronald and that the net equity in the vehicle was approximately $9,370.42, which was nearly the same amount as the alleged net difference in the property division. Ronald testified that he intended to give the Honda vehicle to his daughter and that it was purchased for her use. Ronald

agreed to take the debt or liability on that vehicle. Ronald's testimony about the Honda, his willingness to take the debt, and his intentions to give the asset to his daughter were uncontroverted and drew no objection from Cliressa. Thus, the alleged difference in the property division is $10,000, and the equity for the Honda used by the daughter is approximately the same. Absent that equity, the parties' net shares appear to be almost identical; therefore, we cannot say that the trial court abused its discretion when it made the property division that it did. We overrule Cliressa's fourth issue.

*E. Attorney's Fees*

Cliressa complains in her final issue that the trial court abused its discretion when it allowed Ronald to pay his attorney's fees with community property. Cliressa argues that the court's decision resulted in an unfair and unjust division of the marital property.

At the time the final decree of divorce was issued in this case, a trial court did not have inherent authority to award attorney's fees in a divorce action.[4] *See Wright*, 280 S.W.3d at 914. Instead, attorney's fees related to the trial and appeal of a divorce were treated as part and parcel of the property division. *Id.* Thus, we treat Cliressa's complaint regarding attorney's fees as a challenge to the court's division of the parties' property.

The divorce decree in this case stated that each party was to be responsible for his or her own attorney's fees. Cliressa claims that the trial court's order resulted in Ronald receiving a larger share of the community property because

---

[4]In 2013, the Texas Legislature amended TEX. FAM. CODE ANN. § 6.708 to give trial courts authority to award reasonable attorney's fees and expenses in a divorce proceeding. FAM. § 6.708(c). Because we are bound to apply the law as it existed at the time the divorce decree was signed, Section 6.708(c) does not apply to this case. *See Sadler v. Sadler*, 769 S.W.2d 886, 887 (Tex. 1989).

14

Ronald paid his attorney's fees before the final divorce decree was issued, using community funds.[5]

As previously mentioned, Cliressa has not provided us with the specific values of the assets awarded to each party in this case.[6] Thus, we hold that Cliressa has failed to establish that the trial court awarded Ronald more than 50% of the community property. Consequently, we do not review her claim that the trial court erred when it awarded Ronald a larger share of the community property.

We conclude that the trial court did not abuse its discretion when it ordered each party to pay his or her own attorney's fees in this case. The trial court followed the general rule, and Cliressa has not shown that the court's decision was error. *See Wright*, 280 S.W.3d at 915 ("The general rule in Texas is that each party is responsible for his or her own attorney's fees."). We overrule Cliressa's fifth issue.

## V. *This Court's Ruling*

We affirm the judgment of the trial court.

MIKE WILLSON

JUSTICE

August 21, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

---

[5]Ronald stated at the hearing that he paid his attorney $12,000.00 in fees before the divorce was finalized, using a portion of his income. We note that, absent some deception or objection by Cliressa, Ronald was free to make expenditures of the couple's community property. *See Pelzig v. Berkebile*, 931 S.W.2d 398, 400 (Tex. App.—Corpus Christi 1996, no pet.). There is no evidence in the record to suggest that Cliressa was unaware that Ronald was using community funds to pay his attorney or that she objected to the expenditures at the time they were made.

[6]Cliressa claims that she was awarded $93,678.46 in community property and that Ronald was awarded $128, 632.62 in community property.