**Opinion issued December 19, 2017**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-16-00322-CV

———————————

**MARIA TURRUBIARTES, Appellant**

**V.**

**JOSE PABLO OLVERA, Appellee**

---

**On Appeal from the 309th District Court
Harris County, Texas
Trial Court Case No. 2014-70680**

---

## OPINION ON REHEARING*

We grant rehearing, withdraw our opinion and judgment dated June 1, 2017,

and issue this opinion and judgment in their place.  Because we have granted

---

\* Justice Huddle, who participated in the original decision, resigned her office on June 14, 2017, and did not participate in the opinion on rehearing.

rehearing, the appellant's motion for en banc reconsideration is moot.

This appeal arises from a dispute between divorcing parents over the managing conservatorship of their children. The trial court awarded sole managing conservatorship to the father and possessory conservatorship to the mother. On appeal, the mother contends the trial court erred in denying her motion for new trial challenging that ruling.

We hold that the trial court erred in denying the mother's motion for new trial. We reverse the portion of the final decree of divorce appointing the father as sole managing conservator, affirm the remainder of the decree, and remand this case to the trial court for a new trial solely on the issue of conservatorship.

## BACKGROUND

Maria Turrubiartes and Jose Pablo Olvera have three children, who were born before their marriage. The couple married in February 2013 and separated in October or November 2014, after Maria and a neighbor had an altercation. The altercation arose when Jose told the neighbor that the neighbor's husband and Maria were having an extramarital affair. After the altercation with her neighbor, Maria left with the children.

The trial court heard testimony from Maria and Jose as to conservatorship. No other witnesses testified and the parties introduced little documentary evidence.

Jose testified that Maria refused to tell him where she and the children lived after they separated. Jose said that Maria's brother-in-law threatened to kill him if he tried to visit the children at their new home. Without telling Jose, Maria withdrew the children from the school they had attended in Tomball and enrolled them in a different one in Magnolia.

Jose found out where the children were enrolled about a month later. He visited them there during lunch as often as twice a week in the year before trial. He did not see the children outside of school because he did not know their home address. Maria also told the school that Jose was not allowed to take them from the school. Had he known where the children lived, Jose said he still would not have been able to see them there given the brother-in-law's threat.

Jose further testified that he was the parent who helped the children with their homework before the separation because he can speak and read in English. He also said that he had taken them to the doctor. Jose denied that he ever laid his hands on Maria. He said that he was asking the court to make him primary managing conservator because he had the resources to provide the children a better life and because Maria drove them without a driver's license and he was concerned about their safety.

Maria testified that she and the children have lived with her sister and brother-in-law since the separation. She said that she and Jose separated after he accused

her of adultery and set her and the children's clothes on fire. According to her, she didn't leave so much as Jose ran her off. Maria acknowledged that, before she and Jose had separated, she spoke with her neighbor's husband by phone almost daily, but she denied that they had an affair.

Maria also denied that she kept Jose from seeing the children after the separation. She said that nothing stopped him from visiting them at her sister's, and that Jose had visited them outside of school. That said, she could not recall an occasion when she had allowed Jose to see the children. She also conceded that she had placed the children in therapy without consulting Jose. Maria testified that Jose refused to speak with her, and that he had blocked her telephone number and would not take her calls.

Maria disputed that Jose had helped the children with homework. She said that Jose did nothing for the children and had "never really taken care of" them. Maria acknowledged that she also did not help the children with their studies but said that her nephew did. She requested that "custody be 50/50" because she and Jose were both parents and he had no history of parenting.

The trial court heard testimony from both Maria and Jose about her immigration status. While Jose is a United States citizen, Maria is an undocumented immigrant. Maria drives without a driver's license, which she cannot obtain as an

undocumented immigrant. She testified that she intends to apply for legal status in the country. But Maria conceded that she had not yet applied for that status.

After hearing the evidence, the trial court granted Maria and Jose a divorce based on "discord and conflict of personalities between the two parties that destroys the legitimate ends of the marriage relationship." It divided the property as requested by Jose, and appointed him as sole managing conservator and Maria as possessory conservator. The trial court also ordered Maria to have a licensed driver pick up and return the children during the periods when they were to be in her custody.

Maria moved for a new trial, contending that legally and factually insufficient evidence supported the appointment of Jose as sole managing conservator, and that the trial court should have adhered to the presumption that both parents are to be joint managing conservators. She also contended that the trial court refused to appoint her as a joint managing conservator based on her national origin and immigration status. The trial court denied her motion.

Maria appeals on the same grounds asserted in her new-trial motion. She also complains of the trial court's failure to file timely requested findings of fact and conclusions of law.

We abated the appeal and directed the trial court to file findings of fact and conclusions of law. It did so and we reinstated the appeal.

In relevant part, the trial court found that:

- Maria had numerous conversations with a married male neighbor, engaged in a dispute with the neighbor's wife, and subsequently moved out of the home she shared with Jose;

- when Maria moved out, she took the children with her without notifying Jose and she did not give him their new address;

- Maria also withdrew the children from their school and enrolled them in another one that would not allow Jose to pick them up;

- there was no evidence that Maria was a bad driver, had been involved in any accidents, or had been detained for traffic offenses or arrested while driving with or without the children;

- Maria, however, was an undocumented immigrant without a driver's license who could be detained by the police for driving without a license and subsequently deported due to her immigration status; and

- no documents were offered into evidence to show any immigration proceedings on behalf of or against Maria or to show that she had applied for legal status.

Based on the record, the trial court concluded that the appointment of Maria and Jose as joint managing conservators would not benefit the children's physical, psychological, or emotional needs and development. It concluded that Maria and Jose were incapable of making the children's welfare their first priority and reaching shared decisions in their best interest, and that Maria and Jose could not accept and encourage a positive relationship between the children and the other parent. The trial court stated, however, that other relevant factors bore on its conservatorship decision, including Maria's lack of an established residence of her own and a driver's license, "as well as the instability resulting from her immigration status." The trial

6

court ultimately concluded that the presumption in favor of joint managing conservatorship was rebutted and that Jose should be appointed sole managing conservator.

## DISCUSSION

### I. Conservatorship and motion for new trial

#### A. Standard of review

We review the trial court's conservatorship decision for an abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *Compton v. Pfannenstiel*, 428 S.W.3d 881, 886 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The trial court's denial of a motion for new trial is subject to the same standard of review. *Dolgencorp of Tex. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009) (per curiam); *Ayele v. Jani-King of Houston*, 516 S.W.3d 630, 632 (Tex. App.—Houston [1st Dist.] 2017, no pet.). A trial court abuses its discretion when it acts without reference to any guiding rules or principles and thereby renders a decision that is arbitrary and unreasonable. *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999) (per curiam); *Alanis v. US Bank Nat'l Ass'n*, 489 S.W.3d 485, 510 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). With respect to matters of fact, a trial court does not abuse its discretion so long as some evidence reasonably supports its decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002); *Alanis*, 489 S.W.3d at 510. But it has no discretion to misconstrue the law or misapply the law to the facts. *Walker v. Packer*, 827

S.W.2d 833, 840 (Tex. 1992); *Authorlee v. Tuboscope Vetco Int'l*, 274 S.W.3d 111, 119 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). A trial court therefore abuses its discretion when it fails to analyze or apply the law correctly. *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (per curiam); *Ayele*, 516 S.W.3d at 632.

## B. Applicable law

The best interest of the children is always the primary focus of conservatorship decisions. TEX. FAM. CODE § 153.002. The law presumes that it is in their best interest that both of their parents be named joint managing conservators. TEX. FAM. CODE § 153.131(b); *Bush v. Bush*, 336 S.W.3d 722, 730 (Tex. App.—Houston [1st Dist.] 2010, no pet.). But once the party seeking appointment as sole managing conservator introduces evidence to rebut the presumption, it disappears. *Id.*; *accord Zewde v. Abadi*, 529 S.W.3d 189, 196–97 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Lide v. Lide*, 116 S.W.3d 147, 152 (Tex. App.—El Paso 2003, no pet.). In deciding whether the presumption has been rebutted, the Texas Family Code directs courts to consider multiple factors, namely:

(1) whether the physical, psychological, or emotional needs and development of the children will benefit from the appointment of joint managing conservators;

(2) the ability of the parents to give first priority to the welfare of the children and reach shared decisions in the children's best interest;

(3) whether each parent can encourage and accept a positive relationship between the children and the other parent;

(4) whether both parents participated in the rearing of the children before the filing of the suit;

(5) the geographical proximity of the parents' residences;

(6) if a given child is 12 years of age or older, the child's preference, if any, regarding the person to have the exclusive right to designate the primary residence of the child; and

(7) any other relevant factor.

*See* TEX. FAM. CODE § 153.134(a); *Lide*, 116 S.W.3d at 152–53; *Doyle v. Doyle*, 955 S.W.2d 478, 480 (Tex. App.—Austin 1997, no pet.). If the presumption favoring both parents to be named as joint managing conservators is rebutted, then a trial court may appoint both parents as joint managing conservators only if the seven factors set forth in Section 153.134(a) show that it is in the best interest of the children. *See* TEX. FAM. CODE § 153.134(a); *Bush*, 336 S.W.3d at 730.

## C. Analysis

The record contains evidence rebutting the presumption in favor of joint managing conservatorship. Jose testified that Maria:

- did not tell him where the children resided after they left;
- removed the children from their school and placed them in another one without telling him; and
- told the new school's administrators that he could not take the children off of the school's grounds.

Maria also conceded that she placed the children in therapy but did not tell Jose about this decision. This is some evidence that joint managing conservatorship is not in the children's best interest, and it displaces Section 153.131(b)'s presumption.

9

*See Lide*, 116 S.W.3d at 152–53. But the trial court went outside the statutory factors to include Maria's immigration status as a consideration.

The trial court made two dozen fact findings; nine refer to Maria's immigration status. Among other things, the court concluded that Maria lacked stability "due to her immigration status." It also noted that Jose, by contrast, is a United States citizen.

Immigration status, standing alone, is not probative of Maria's fitness to be a parent to her children so as to deny her joint managing conservatorship. *See TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 241–42 (Tex. 2010) (immigration status was collateral matter "not relevant to proving a material issue in the case"). The trial court heard no evidence in this case regarding any detention or immigration-related charge, any pending removal proceeding, or that Maria was a subject of any criminal prosecution. *See id.*; *see also Republic Waste Servs. v. Martinez*, 335 S.W.3d 401, 406–11 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (trial court properly excluded immigration status where speculative possibility of deportation limited probative value of evidence). The trial court expressly found that there was no evidence that Maria "has been detained by immigration authorities since coming to this country in 2006, or that she is the subject of any removal proceedings against her." The trial court's orders otherwise protected the children by requiring that they travel with a

10

licensed driver and by designating Jose as the parent to determine the children's residence and school.

Given that the court granted primary possession of the children to Jose and ordered Maria to have a licensed driver pick up and return the children in connection with her periods of possession, her immigration status was collateral to the children's best interest. Absent evidence showing that it has had a material, adverse effect on the ability to parent, immigration status should not be used as a basis to deny joint managing conservatorship. *See* TEX. FAM. CODE § 153.134(a); *TXI Transp.*, 306 S.W.3d at 241–42 (immigration matter not relevant to a material issue is collateral). Because it is not one of the statutory factors to determine best interest and the evidence did not otherwise demonstrate its relevance, the trial court erred in relying on Maria's immigration status in determining whether she can be a joint managing conservator.

The other circumstances emphasized by the trial court in its findings of fact and conclusions of law were that Maria failed to keep Jose informed about the children's whereabouts, healthcare, and school enrollment. A trial court may decide that joint managing conservatorship is not in the best interest of the children, or make other custodial decisions, based on evidence that one parent has systematically tried to deprive the other of access to the children without justification. For example, in *Allen v. Allen*, 475 S.W.3d 453 (Tex. App.—Houston [14th Dist.] 2015, no pet.), the

11

trial court made a husband and wife joint managing conservators of their children, but granted only the husband the right to decide the children's primary residence, based on the wife's interference with his access to their children. *Id.* at 455. At trial, the husband testified to several specific instances of interference, including an occasion when his estranged wife refused to let him see the children at her residence or take them with him during his visitation. *Id.* When he later tried to see the children at their school during lunch, he was told by school officials that his wife had forbidden visitation. *Id.* On a subsequent occasion, the wife refused to bring the children to a court-designated location for visitation exchanges. *Id.* She also repeatedly reported him to child protective services for alleged physical and sexual abuse of the children; however, each of her allegations was dismissed after investigation. *Id.* at 455–56, 458. In granting the husband the right to decide the children's primary residence, the trial court emphasized that his wife "persisted and would likely continue to persist in preventing the children from having any chance at a relationship with their father." *Id.* at 458. The Fourteenth Court of Appeals affirmed, holding that "persistent alienation of the other parent can be a guiding consideration in making possession and access determinations" and that the trial court had not abused its discretion given the ample evidence of alienation. *Id.* at 458–59.

The record before us significantly differs from the one in *Allen*. The trial court did not find that Maria likely would persist in preventing the children from having a relationship with Jose upon the trial court's determination that Jose would have primary possession and would decide where the children would be enrolled in school. The record contains no evidence that Maria violated a court order regarding possession or access to the children. The record does not contain evidence of any specific instances where Jose tried to arrange visitation with the children outside of school hours, but was refused access by Maria. Thus, although there is some evidence to support possessory conservatorship, we cannot say that the trial court's reliance on Maria's immigration status to determine conservatorship, rather than adhering to the factors set forth in the statute, did not inform its decision. Because the statutory factors do not include that status as a consideration and it is not otherwise relevant on this record to its determination, we hold that that the trial court erred in denying Maria's motion for a new trial on the issue of conservatorship, which challenged the trial court's reliance on her immigration status. *See* TEX. FAM. CODE § 153.134(a).

## II.    Remaining challenges

As we are remanding for a new trial on conservatorship, we do not reach Maria's separate issues concerning violations of a constitutional right to equal protection under the law and international law. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

We reverse the portion of the final decree of divorce appointing Jose as sole managing conservator, affirm the remainder of the decree, including its provisions on primary possession and access, and remand this case to the trial court for a new trial solely on the issue of conservatorship.


Jane Bland
Justice

Panel consists of Justices Keyes and Bland.