# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-20-00179-CV

---

**S. C., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

**FROM THE 146TH DISTRICT COURT OF BELL COUNTY**
**NO. 305,655-B, THE HONORABLE JACK WELDON JONES, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

S.C. (Mother) appeals from a final order modifying the terms and conditions of her conservatorship over her six children.[1]  The modified order appoints the children's paternal grandmother, "Renee," as managing conservator and Mother as possessory conservator. Concluding that the district court did not abuse its discretion, we will affirm.

## BACKGROUND

Mother and J.W. (Father) are the parents of "James," "John," "Julia," "Jack," "Jeff," and "Jane."  In October 2015, the Department of Family and Protective Services contacted Mother after learning that she and the newborn Jeff tested positive for

---

[1] We refer to the children and their relatives by initials or fictious names.  *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8(b).

methamphetamines. Mother agreed to enter the Department's family-based services program and completed all requirements of the program in June 2016.

Mother gave birth to Jane in February 2017, and both Mother and child tested positive for amphetamines and methamphetamines. The Department removed the children and placed them with Renee. Several months later, the Department returned the children to Mother and recommended that she receive sole custody. The district court issued an order appointing her managing conservator and Father possessory conservator (2018 Order).

In January 2019, the Department received a report alleging inadequate supervision of Jack and Julia. According to the report, Jack and Julia were staying with their maternal grandparents; their eight-year-old cousin also lived in the house. The grandparents allegedly failed to prevent the cousin from having sexual contact with Julia despite knowing his history of "acting out sexually." A Department caseworker subsequently visited Mother's home to discuss the issues. During the visit, Mother agreed to take an oral drug test. The test returned positive for methamphetamine and amphetamine, and the Department removed the children and again placed them with Renee. The Department filed an original petition to terminate the rights of both parents and, in the alternative, a motion to modify the 2018 Order to appoint Renee as managing conservator. The Department eventually decided not to seek termination and recommended that the district court modify the 2018 Order.

At the final hearing in December 2019, the district court admitted evidence offered by the Department and heard testimony from Mother, Department caseworker Jocelyn Holdburg, and the children's guardian ad litem. The district court subsequently issued an order modifying the 2018 Order to appoint Renee sole managing conservator and Mother as possessory conservator. The order granted Mother "two or three hours of unsupervised visitation

2

with the children" each week and gave Renee discretion to allow additional visits. The district court further found that appointing Father as possessory conservator was not in the children's best interest and ordered that he have no contact with them. Mother appealed.

## DISCUSSION

Mother argues in five issues that the district court abused its discretion. She contends that the court failed to apply a statutory presumption in her favor, removed her as managing conservator without sufficient evidence that doing so was in the children's best interest, failed to grant her specific and enforceable visitation rights, and failed to grant Renee the right to apply for passports for the children.

### Legal Standards

We review conservatorship determinations made after a bench trial for an abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). "A trial court abuses its discretion when it acts without reference to any guiding rules or principles and thereby renders a decision that is arbitrary and unreasonable." *Turrubiartes v. Olvera*, 539 S.W.3d 524, 528 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). In determining whether a trial court abused its discretion, we ask first "whether the trial court had sufficient evidence upon which to exercise its discretion and, if so, whether it erred in the exercise of that discretion." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.). We answer the first question by applying traditional sufficiency standards of review. *Zeifman v. Michels*, 212 S.W.3d 582, 588 (Tex. App.—Austin 2006, pet. denied). We then determine whether the court's decision was reasonable. *Id.*

A court may modify an order appointing a conservator of a child "if modification would be in the best interest of the child and the circumstances of the child, a conservator, or

3

other party affected by the order have materially and substantially changed since . . . the date of the rendition of the order." Tex. Fam. Code § 156.101(a)(1)(A). The party seeking modification has the burden to establish these elements by a preponderance of the evidence. *In re J.A.J.*, 243 S.W.3d at 616 (citing Tex. Fam. Code § 105.005).

**Parental Presumption**

Mother initially contends that the district court failed to apply a statutory presumption favoring appointment of a child's parent or parents as managing conservator. She relies on a provision of chapter 153 of the Family Code that creates "a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child." *See* Tex. Fam. Code § 153.131(b). The statute gives effect to this presumption by providing that a court "shall" appoint a child's parent or parents as managing conservators "unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development." *Id.* § 153.131(a). The Department responds that the parental presumption does not apply to modification proceedings. *See In re V.L.K.*, 24 S.W.3d 338, 344 (Tex. 2000) ("We conclude that Chapter 153's parental presumption does not apply in a Chapter 156 modification proceeding.").

Although we agree with the Department that section 153.131 did not apply to its motion to modify, that does not end our inquiry. Neither *V.L.K.* nor the Supreme Court's other decision rejecting a parental presumption in modification proceedings "involved a modification proceeding in which a fit parent had been named the child's managing conservator in the order sought to be modified." *In re C.J.C.*, ___ S.W.3d ___, ___, No. 19-0694, 2020 WL 3477006, at

4

*9 (Tex. June 26, 2020) (citing *In re V.L.K.*, 24 S.W.3d at 339–43, and *Taylor v. Meek*, 276 S.W.2d 787, 790 (Tex. 1955)). A proceeding to modify an order that names a parent as a child's managing conservator implicates "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id.* at *1 (quoting *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality op.)). Even though chapter 156 does not contain a statutory parental presumption, the Court "read[s] any best-interest determination in which the court weighs a fit parent's rights against a claim to conservatorship or access by a nonparent to include a presumption that a fit parent acts in his or her child's best interest." *Id.* at *10. Because the 2018 Order appoints Mother as managing conservator, the presumption applies here. *See id.* Although we overrule Mother's argument that the chapter 153 presumption applies, we will apply the *Troxel* presumption in analyzing Mother's challenge to the sufficiency of the evidence supporting the court's ruling. *See id.* (citing *Troxel*, 530 U.S. at 66).[2]

**Sufficient Evidence**

Next, Mother argues that the district court abused its discretion because it did not have sufficient evidence before it to decide the best-interest issue.

In conducting a legal-sufficiency challenge, we examine the evidence in the light most favorable to the verdict, credit favorable evidence if a reasonable juror could, and disregard

---

[2] Mother entitled her first issue as a challenge to whether the Department presented sufficient evidence of a material and substantial change in circumstances, *see* Tex. Fam. Code § 156.101(a)(1)(A), but her only substantive argument on that point is that "the record did not include evidence showing a material and substantial change in circumstances." Applying the appropriate standards of review, we conclude that her testing positive for methamphetamine and amphetamine a year after the 2018 Order is legally and factually sufficient evidence of a material and substantial change in circumstances. *See In re J.R.P.*, 526 S.W.3d 770, 779 (Tex. App.— Houston [14th Dist.] 2017, no pet.) (holding similar pattern of parental drug use constituted material and substantial change).

contrary evidence unless a reasonable juror could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We will sustain a legal-sufficiency challenge if, as relevant here, the record reveals "a complete absence of evidence of a vital fact." *Id.* at 810. In reviewing for factual sufficiency, "we consider and weigh all of the evidence in the record, and set aside the finding only if the evidence supporting the finding is so weak as to be clearly wrong and manifestly unjust." *Gonzales v. Maggio*, 500 S.W.3d 656, 662 (Tex. App.—Austin 2016, no pet.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)). Under either standard, the trier of fact is "the sole judge of the credibility of the witnesses and the weight to be given their testimony." *In re P.A.C.*, 498 S.W.3d 210, 214 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

To determine the best interest of the children, we rely on the non-exclusive *Holley* factors:

- the children's wishes;

- the children's present and future emotional and physical needs;

- any emotional and physical danger to the children now and in the future;

- the parental abilities of the individuals seeking custody;

- the programs available to assist the individuals seeking custody to promote the best interest of the children;

- the plans for the children by the individuals or agency seeking custody;

- the stability of the home or proposed placement;

- the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and

- any excuse for the parent's acts or omissions.

6

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). No specific factor or set of facts is necessary to support a best-interest finding. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

Mother contends that the record contains no evidence supporting a conclusion that it is in the best interest of the children to remove her as managing conservator. She argues that she tested negative for drugs for nine months, obtained housing, attended visits with her children, and worked enough to make one child support payment. She contrasts this with Renee, who allowed Father to visit the children despite the Department's safety concerns.

Although Mother has improved since the most recent removal, "evidence of a recent turn-around in behavior by the parent does not totally offset evidence of a pattern of instability and harmful behavior in the past." *Spurck v. Texas Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 222 (Tex. App.—Austin 2013, no pet.) (quoting *Smith v. Tex. Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 673, 681 (Tex. App.—Austin 2005, no pet.)). There is undisputed evidence that Mother regularly used illegal drugs including during her pregnancies with Jeff and Jane. Her pattern of use and relapse continued despite two Department investigations and removal of the children on account of her drug use. The district court was not required to ignore this evidence or disregard the possibility that she would relapse again. *See J.G. v. Texas Dep't of Fam. & Protective Servs.*, 592 S.W.3d 515, 525 (Tex. App.—Austin 2019, no pet.) (explaining that "[a] trier of fact may measure a parent's future conduct by his past conduct" (quoting *In re B.R.*, 456 S.W.3d 612, 616 (Tex. App.—San Antonio 2015, no pet.))); *In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (observing that similar pattern of drug use suggests mother's unwillingness to provide safe environment in future).

7

This is especially true here because there was evidence questioning the reliability of the negative drug test results. Holdburg testified that she became concerned because Mother almost never tested on her assigned date. To "confirm the negative results," Holdburg told Mother to take a nail test at a different testing company, Thumbs Up, but instead of providing a nail sample, Mother returned to the first company and took a urinalysis test at her own expense. Mother testified that she was confused, but Holburg testified that she asked Mother to take the test three separate times and provided Thumbs Up's name and address. Moreover, Mother was unable to provide the results from the urinalysis test, and she admitted on the stand that "[i]t looks like I'm lying." The district court could reasonably credit Holdburg over Mother, *see In re P.A.C.*, 498 S.W.3d at 214, and could reasonably infer from Mother's unwillingness to test at Thumbs Up that her previous negative results were unreliable, *cf. In re E.R.W.*, 528 S.W.3d 251, 265 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("Additionally, a fact finder reasonably can infer that a parent's failure to submit to court-ordered drug tests indicates the parent is avoiding testing because they were using illegal drugs.").

Further, the record contains evidence that Mother is not yet able to provide a stable home. Holdburg testified that Mother, whose child support obligation was $300 a month, made only one payment in the previous year. Mother testified that she provided additional support (such as diapers) directly to Renee, but she could not provide any evidence other than her testimony of that support. Mother rarely picked up the children on time for their visits and was usually late returning them. Although Mother has housing and has been employed sporadically since the Department removed the children, she was not employed at the time of trial. More importantly, Mother did not explain how she will provide for the children's future needs. The absence of evidence on that point is relevant "because '[a] parent who lacks stability,

8

income, and a home is unable to provide for a child's emotional and physical needs.'" *See In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (quoting *In re J.R.W.*, No. 14-12-00850-CV, 2013 WL 507325, at *9 (Tex. App.—Houston [14th Dist.] Feb. 12, 2013, pet. denied) (mem. op.)).

Additionally, Mother insists that Renee has proved she is not capable of providing a safe and stable home. *See In re F.M.E.A.F.*, 572 S.W.3d 716, 726 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) ("A child's need for permanence through the establishment of a stable, permanent home is the paramount consideration in a best-interest determination."). Specifically, she contends that Renee inappropriately disciplined the children and allowed Father to visit them despite the court having abated his visits until he tested negative for drugs. Moreover, she alleges that Renee is not eligible for assistance from the Department.

Holdburg testified that Renee cannot become a licensed foster parent—a prerequisite to financial assistance from the Department—because of her husband's criminal record.[3] The children's guardian ad litem testified that Renee plans to "go back to work" to provide for them, but the Department provided no information about her financial resources. The discipline issue arose when Mother provided Holdburg with photos of Jeff with "markings" on his face and buttocks.[4] Holdburg testified that when she investigated, Jeff said his brother accidentally hit him in the face with a basketball. Jeff did not explain the other marks, but his siblings acknowledged that they "sometimes get popped on the butt" by Renee. When Holdburg reminded Renee of the Department's prohibition on physical discipline, Renee agreed to stop, and Holdburg testified that she has no concerns that Renee is physically abusive. However,

---

[3] Holdburg did not elaborate on the nature of his record.

[4] The images, taken by Mother's mother, are not part of the record before us.

9

Holdburg has had less success convincing Renee to not allow Father's visits. Holdburg testified that she is having "ongoing conversations" with Renee concerning the visits and stressed that Renee is "well aware" that the Department would permanently remove the children if Father harmed them.

The Department's safety concerns were much greater for Mother than for Renee. The children reported to Holdburg that they had seen "Alex," one of Mother's ex-boyfriends, during several of their visits with Mother. Holdburg testified that Alex and Mother "have a history of domestic violence that the children have witnessed" and that the children do not feel safe around him. That is especially true of James and John because of an incident where Alex "drilled" the door to their room shut and trapped them. Mother testified that she does not interact with Alex and said her children are lying, but the district court could reasonably disregard her assurances. *See In re P.A.C.*, 498 S.W.3d at 214.

Finally, Holdburg and the children's guardian ad litem both agreed that it is in the best interest of the children to appoint Renee as managing conservator. Holdburg explained that Renee is the only one of the children's relatives capable of providing an appropriate home. The next option would be foster care, and it is unlikely the Department would find a foster parent willing to take all six children. The ad litem explained that Renee has demonstrated her willingness to take the children immediately and is planning to return to work to provide for them. In the ad litem's view, Mother has not shown a similar urgency to establish a permanent home.

Applying the appropriate standards of review and considering the relevant factors, we conclude that there is legally and factually sufficient evidence to support the district court's conclusion that appointing Renee as sole managing conservator is in the best interest of the

10

children. Nor was it unreasonable for the court to conclude the *Troxel* presumption had been rebutted. Although Renee's willingness to permit Father's visits is less than ideal, the court could have reasonably concluded that Renee's home will be safer and more stable than Mother's. *See In re F.M.E.A.F.*, 572 S.W.3d at 726. Having found no abuse of discretion, we overrule Mother's second issue.

**Visitation**

Mother argues in her third and fourth issues that the district court failed to specify her visitation rights as possessory conservator. If a court appoints a possessory conservator, "[t]he court shall specify and expressly state in the order the times and conditions for possession of or access to the child, unless a party shows good cause why specific orders would not be in the best interest of the child." Tex. Fam. Code § 153.006(c). Here, the district court granted Mother "two or three hours of unsupervised visitation with the children" plus additional time at Renee's discretion.

Mother first argues that the Department did not show good cause why more specific orders were not in the children's best interest. The terms of the order are materially identical to the visitation allowed by temporary order in effect since June 2019, and there is no evidence that this arrangement has proven unworkable. Moreover, issuing more specific visitation orders could further complicate Mother's lifestyle as she works to achieve greater stability. The record amply supports a conclusion that preserving the current visitation arrangement—and its flexibility—is in the best interest of the children.

A court's discretion does not extend to issuing a visitation order so vague as to be unenforceable. *See In re Marriage of Collier*, 419 S.W.3d 390, 398 (Tex. App.—Amarillo 2011,

11

no pet.) (explaining possession order "must be sufficiently specific so as to be enforceable by contempt" (citing *In re J.S.P.*, 278 S.W.3d 414, 422–23 (Tex. App.—San Antonio 2008, no pet.))). Mother argues in her next issue that "two or three hours of unsupervised visitation with the children" is so vague that it amounts to a complete denial of "enforceable possession of and access" to the children. Although the order is not clear on precisely how long Mother's visits may last, the order clearly requires Renee to provide Mother with unsupervised access to the children each week for at least two hours. Based on the arguments before us, we conclude the order is not so vague as to be unenforceable. We overrule Mother's third and fourth issues.

**Passport**

Mother argues in her final issue that the district court failed to grant Renee the right to apply for passports for the children. Section 153.371 of the Family Code provides that "[u]nless limited by court order or other provisions of this chapter, a nonparent . . . appointed as a managing conservator of the child" has the right to, among other things, "apply for a passport for the child." Tex. Fam. Code § 153.371(12)(A). Mother contends that the district court abused its discretion by omitting passport provisions from the order appointing Renee sole managing conservator. The Department responds that Mother lacks standing to raise this issue, and we agree. An appealing party lacks standing to "complain of errors that do not injuriously affect it or that merely affect the rights of others." *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000); *A.P. v. Texas Dep't of Family & Protective Servs.*, No. 03-18-00780-CV, 2019 WL 1342163, at *1 (Tex. App.—Austin Mar. 26, 2019, no pet.) (mem. op.). Any error in omitting the passport provisions affects only Renee and the children. Mother therefore has no standing to raise this issue. *See A.P.*, 2019 WL 1342163, at *1 (concluding mother lacked

12

standing to challenge ruling on grandmother's petition in intervention); *In re G.F.*, No. 09-11-00316-CV, 2012 WL 112549, at *1 (Tex. App.—Beaumont Jan. 12, 2012, no pet.) (mem. op.) (holding mother lacked standing to raise complaint concerning actions of children's attorney ad litem.).  We overrule Mother's fifth issue.

## CONCLUSION

We affirm the district court's modification order.

_____

Edward Smith, Justice

Before Justices Goodwin, Kelly, and Smith

Affirmed

Filed:   August 21, 2020