**Opinion filed February 10, 2022**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00094-CV

_____

## IN THE INTEREST OF K.L.S., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 52,248-C**

### M E M O R A N D U M   O P I N I O N

Appellant, who is K.L.S.'s mother (Mother), appeals from a final order in a suit affecting the parent-child relationship in which the trial court appointed Appellee, K.L.S.'s father (Father), as K.L.S.'s sole managing conservator; gave Father certain exclusive rights, including the exclusive right to designate K.L.S.'s primary residence without any geographic restriction; appointed Mother as K.L.S.'s possessory conservator; and ordered that Mother have supervised visitation with K.L.S. for two hours on the Saturdays following the first, third, and fifth Friday of

each month as well as daily electronic access to K.L.S. In four issues, Mother asserts that the trial court abused its discretion when it named Father sole managing conservator, limited Mother's visitation with K.L.S., failed to enter findings of fact and conclusion of law, and failed to enter a prospective possession order for when K.L.S. was over three years of age. We affirm the trial court's order.

*Background*

Father and Mother were not married when K.L.S. was born in June 2018. Father and Mother lived together after K.L.S. was born until Father, who was in the military, was deployed to Afghanistan in September 2018. After Father returned to the United States, he did not live with Mother and K.L.S. Mother and Father's relationship was always volatile, with both parties accusing the other of family violence.

On March 7, 2019, the Office of the Attorney General filed a petition to establish the parent–child relationship between K.L.S. and Father. In temporary orders, Father was adjudicated to be K.L.S.'s parent, and Mother and Father were named temporary joint managing conservators with Father having the exclusive right to designate K.L.S.'s primary residence within Taylor County and contiguous counties. Mother had possession of K.L.S. pursuant to the standard possession order and was required to pay child support.

By the time of the final hearing, both Mother and Father had requested to be appointed K.L.S.'s sole managing conservator and that the other party have restricted possession of K.L.S. After hearing testimony from both Mother and Father, the trial court named Father sole managing conservator and Mother possessory conservator and ordered that Mother would have supervised visitation with K.L.S. for two hours on the Saturdays following the first, third, and fifth Friday of the month as well as daily electronic communication with K.L.S. This appeal ensued.

2

*Analysis*

In four issues, Mother challenges the trial court's rulings on conservatorship and possession as well as the trial court's failure to make findings of fact and conclusions of law.

## A. Standard of Review

The trial court is vested with broad discretion in making decisions on custody, possession, and visitation, and we review the trial court's decisions for an abuse of that discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re A.J.E.*, 372 S.W.3d 696, 698 (Tex. App.—Eastland 2012, no pet.); *see also In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). A trial court abuses its discretion if it acts unreasonably, arbitrarily, or without reference to guiding principles or when it fails to correctly analyze or apply the law. *A.J.E.*, 372 S.W.3d at 698; *see also J.A.J.*, 243 S.W.3d at 616.

In family law cases, challenges to legal and factual sufficiency are not independent grounds of error but factors used to determine whether the trial court abused its discretion. *In re K.T.R.*, No. 11-20-00031-CV, 2020 WL 4379063, at *2 (Tex. App.—Eastland July 31, 2020, no pet.) (mem. op.). In determining if the trial court abused its discretion, we consider whether it had sufficient information upon which to exercise its discretion and, if so, whether it erred in the application of that discretion. *In re J.H.C.*, No. 11-17-00187-CV, 2019 WL 2557542, at *6 (Tex. App.—Eastland June 20, 2019, no pet.) (mem. op.). The review of the sufficiency of the evidence is part of the first inquiry. *Id.* After we assess the evidence, we consider whether, based on that evidence, the trial court made a reasonable decision. *Id.*

In conducting our analysis, we keep in mind that conservatorship determinations are "intensely fact driven," *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002), and that the trial court "is in a better position to determine what will be in the

best interest of the child since it faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent," *J.H.C.*, 2019 WL 2557542, at *6 (quoting *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied)); *see also Pore v. Ellis*, No. 03-20-00550-CV, 2021 WL 5095496, at *3 (Tex. App.—Austin Nov. 3, 2021, no pet.) (mem. op.) ("A factfinder's decision on conflicts in the evidence is generally viewed as conclusive."). A trial court does not abuse its discretion when it bases its decision on conflicting evidence so long as some evidence of a substantive and probative character supports the decision. *J.H.C.*, 2019 WL 2557542, at *6; *A.J.E.*, 372 S.W.3d at 699.

When no findings of fact or conclusions of law are properly requested or filed, we imply all facts necessary to support the judgment that are supported by the evidence. *Worford v Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *In re K.E.S.*, No. 11-20-00167-CV, 2021 WL 219668, at *3 (Tex. App.—Eastland Jan. 22, 2021, no pet.) (mem. op.). However, when a reporter's record is filed, these implied findings are not conclusive, and the appellant may challenge the legal and factual sufficiency of the evidence to support the findings. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003); *Gabra v. Gabra*, No. 01-20-00298-CV, 2021 WL 1567750, at *11 (Tex. App.—Houston [1st Dist.] Apr. 22, 2021, no pet.) (mem. op.). The trial court's decision must be affirmed if it can be upheld on any legal theory that finds support in the record. *Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766 (Tex. 2011) (per curiam); *In re K.A.M.S.*, 583 S.W.3d 335, 344 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

### B. *Findings of Fact and Conclusions of Law*

In her third issue, Mother argues that the trial court erred when it failed to make findings of fact and conclusions of law regarding the specific reasons that it deviated from the standard possession order.

If possession of a child by a parent is contested and the ordered possession varies from the standard possession, "on request by a party, the court shall state in writing the specific reasons for the variance from the standard order." TEX. FAM. CODE ANN. § 153.258(a) (West Supp. 2021). The party's request for findings of fact under Section 153.258 must "conform to the Texas Rules of Civil Procedure." *Id.* § 153.258(b); *see also K.E.S.*, 2021 WL 219668, at *3.

Pursuant to Rule 296 of the Texas Rules of Civil Procedure, a party must request findings of fact and conclusions of law within twenty days after a judgment is signed in a case tried in the district or county court without a jury. TEX. R. CIV. P. 296. The trial court is required to file its findings of fact and conclusions of law within twenty days after a timely request is filed. TEX. R. CIV. P. 297. If the trial court fails to make timely findings of fact and conclusions of law, the party, within thirty days of filing the original request, must file a notice of past due findings of fact and conclusions of law. *Id.* Upon the filing of the notice, the time for the trial court to file findings of fact and conclusions of law is extended to forty days from the date that the original request was filed. *Id.* A party who fails to file a notice of past due findings waives the right to challenge the trial court's failure to make findings of fact and conclusions of law. *Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 137 (Tex. 2017) (per curiam).

The trial court signed the final order on April 29, 2021. On May 19, 2021, Mother requested findings of fact and conclusions of law "in accordance with Rule 297 of the Texas Rules of Civil Procedure" and did not specifically request findings pursuant to Section 153.258 of the Family Code. Although the trial court did not file findings of fact and conclusions of law within twenty days of May 19, 2021, Mother did not file a notice of past due findings of fact and conclusions of law.

Mother argues that she was not required to file the notice of past due findings of fact and conclusions of law because the requirement in Section 153.258(b) that a request for findings conform to the Texas Rules of Civil Procedure applies only to the original request and "does not anticipate that a judge will fail to follow the statute and not enter the required findings." However, even if Mother requested findings under Section 153.258, rather than under the Texas Rules of Civil Procedure, the plain language of Section 153.258 requires that the request conform to the Texas Rules of Civil Procedure, not simply be timely filed.

Both Section 153.258 and Rule 297 require a trial court to make properly requested findings of fact and conclusions of law. FAM. § 153.258(a) (stating that trial court "shall" make findings); TEX. R. CIV. P. 297 (mandating that the trial court "shall" file findings of fact and conclusions of law); *Larry F. Smith, Inc. v. The Weber Co., Inc.*, 110 S.W.3d 611, 614 (Tex. App.—Dallas 2003, pet. denied) ("By virtue of rule 297, the trial court's duty to make such findings and conclusions is mandatory when a party makes a timely request."). However, if the trial court fails to do so, the party must file a timely notice of past due findings in order to preserve a complaint on appeal as to the trial court's failure to make findings of fact and conclusions of law. *Ad Villarai, LLC*, 519 S.W.3d at 137; *In re E.M.T.*, No. 04-18-00805-CV, 2019 WL 1370323, at *3 (Tex. App.—San Antonio Mar. 27, 2019, no pet.). By failing to file a notice of past due findings of fact and conclusions of law, Mother waived her right to complain on appeal about the trial court's failure to make the requested findings and conclusions. *See Ad Villarai, LLC*, 519 S.W.3d at 137; *E.M.T.*, 2019 WL 1370323, at *3 (holding that the appellant waived right to complain on appeal that the trial court failed to enter findings of fact and conclusions of law pursuant to Section 153.258 by failing to file notice of past due findings). We overrule Appellant's third issue.

## C.  Conservatorship

In her first issue, Mother asserts that the trial court erred when it named Father sole managing conservator.  Mother specifically contends (1) that there is a rebuttable presumption under the Family Code that she should be appointed joint managing conservator; (2) that even though the trial court could not appoint her joint managing conservator if there was credible evidence of a history or pattern of past or present child neglect, or physical or sexual "abuse," FAM. § 153.004(b), this "abuse," as statutorily defined, must be based on conduct directed toward a child, *id.* §§ 153.004(g)(1), 261.001(1)(A)–(M), and there was no evidence that she abused K.L.S; and (3) that there was insufficient evidence that she engaged in a history or pattern of family violence.

The best interest of the child is always the primary consideration in determining issues of conservatorship and possession of and access to a child.  FAM. § 153.002 (West 2014); *J.A.J.*, 243 S.W.3d at 614.  The Family Code provides a rebuttable presumption that appointing parents as joint managing conservators is in the best interest of the child.  FAM. § 153.131(b).  This presumption is rebutted if the trial court makes a finding of a history of family violence involving the parents of the child.  *Id.*; *Turrubiartes v. Olvera*, 539 S.W.3d 524, 528 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("But once the party seeking appointment as sole managing conservator introduces evidence to rebut the presumption, it disappears."); *see also* FAM. § 153.005(c)(1) (requiring the trial court, in appointing conservators, to consider whether, preceding the filing of the suit or during the pendency of the suit, a party engaged in a history or pattern of family violence).

Family violence includes:

> An act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury,

7

assault, or sexual assault, but does not include defensive measures to protect oneself.

FAM. § 71.004(1) (West 2019); *see also* 153.004(g)(2) (applying definition in Section 71.004(a) to determination of whether there has been a history of family violence). In determining whether a parent has demonstrated a history or pattern of family violence, the trial court, as the factfinder, may consider both the number and kinds of acts involved. *See Gabra*, 2021 WL 1567750, at *12 ("Because section 153.004 does not define 'history' or 'pattern,' courts use a factual analysis, considering both the number and kinds of acts involved when determining whether the appointment of joint managing conservators is barred."). When the trial court makes a finding of a history or pattern of family violence, the non-violent parent will generally be appointed the sole managing conservator. *See Lewelling v. Lewelling*, 796 S.W.2d 164, 168 (Tex. 1990); *In re J.M.M.*, No. 13-20-00086-CV, 2021 WL 4897665, at *5 (Tex. App.—Corpus Christi–Edinburg Oct. 21, 2021, no pet.) (mem. op.).

Without findings of fact and conclusions of law, we must affirm the trial court's order based on any legal theory that finds support in the record. *See Rosemond*, 331 S.W.3d at 766; *K.A.M.S.*, 583 S.W.3d at 344. We, therefore, consider whether the evidence was sufficient to support an implied finding that Mother had a history of family violence that rebutted the presumption that Mother should be named joint managing conservator. *See Gabra*, 2021 WL 1567750, at *13; *K.E.S.*, 2021 WL 219668, at *3 ("When a party fails to file a request for findings of fact as required by Section 153.258, all findings necessary to support the trial court's judgment are implied."). In doing so, we review the record in the light most favorable to the trial court's ruling to determine whether some evidence supports it. *In re Marriage of Harrison*, 557 S.W.3d 99, 131 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

Father testified that Mother was the perpetrator of family violence against him. Father presented evidence that after K.L.S. was born, he and Mother were living together and Mother punched him when he was in the shower; that, in February 2019, Mother attempted to kick in the door of his apartment while he and K.L.S. were inside; that, on March 17, 2019, Mother punched him and threw a number of objects at him while he was holding K.L.S.; and that Mother slapped him on March 31, 2019, and on May 25, 2020. Mother admitted that, on March 31, 2019, she slapped Father and the woman who was with him. Mother pled no contest to criminal charges of assault family violence and assault based on the March 31 incident. The criminal court deferred a finding of guilt, placed Mother on community supervision for a period of eighteen months, and assessed a fine of $500.

Mother testified that Father stalked, choked, hit, and raped her and had stolen her phone and her car. However, Father denied that any of the events occurred in the way that Mother described; the charges against Father based on the alleged choking were no-billed by the grand jury; at the time of the final hearing, no charges had been filed based on Father's alleged theft of Mother's phone and car; Mother testified inconsistently that the alleged rape occurred both when she was pregnant and in August 2018, which was after K.L.S. was born; and Mother told Father that she would say whatever was necessary for her to have a chance in court.

The trial court, as the sole judge of the weight and credibility of the evidence, was permitted to reject Mother's version of the parties' conduct. *See In re L.G.K.S.*, No. 12-18-00178-CV, 2019 WL 4462693, at *5 (Tex. App.—Tyler Sept. 18, 2019, no pet.) (mem. op.) ("In its role as a factfinder, the trial court was entitled to choose which account to believe and could have reasonably credited [one parent's] version of events."). Based on the evidence, the trial court reasonably could have found that Mother had a history of family violence such that the presumption that it was in

K.L.S.'s best interest for Mother to be named joint managing conservator was rebutted. *See* FAM. § 153.131(b); *In re J.A.J.*, 243 S.W.3d at 614.[1]

Without the presumption that Mother should be named a joint managing conservator, there was sufficient evidence to support the trial court's determination that it was in K.L.S.'s best interest for Father to be appointed the sole managing conservator. In determining the best interest of the child, the court may consider factors such as: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist the individual to promote the best interest of the child, (6) the plans for the child by the individual seeking custody, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate that the existing relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). "Proof of best interest is not limited to these factors, nor do all factors always apply in every case." *In re S.A.H.*, 420 S.W.3d 911, 926 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Further, although no single factor is controlling, "the presence of a single factor may, in some instances, be sufficient to support the best-interest finding." *D.A.I. v. J.P.L.*, No. 14-20-00109-CV, 2021 WL 3161490, at *5 (Tex. App.—Houston [14th Dist.] July 27, 2021, no pet.) (mem. op.).

Mother testified that she came to Abilene as a runaway, began a relationship with a man when she was thirteen years old, and married that man because she had

---

[1] A trial court is statutorily precluded from appointing a party as a joint managing conservator if "credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child." FAM. § 153.004(b). Mother argues that, based on the statutory definition of "abuse," only abuse directed at K.L.S. would preclude her from being named a joint managing conservator. Because we have determined that the evidence that Mother engaged in a history of family violence was sufficient to rebut the presumption that Mother be named a joint managing conservator, we need not address the argument that "abuse" under Section 153.004 of the Family Code is limited to conduct directed at a child. *See* TEX. R. APP. P. 47.1.

10

nowhere else to go. Mother had five children during her seventeen-year marriage. Mother had another child in 2017. At the time of the final hearing, Mother's five oldest children were living with their father. Mother testified that, while she was married, she "never got to experience life as far as going out, drinking, partying, and having friends." Mother did not want a relationship when she met Father in 2017 and was very upset when she learned that she was pregnant with K.L.S.

Mother and Father decided to live together after K.L.S was born in June 2018. Father described his relationship with Mother during that period as "pretty rocky." While they were living together, Mother punched Father when he was in the shower because he was not talking to her and she wanted him to leave. Mother testified that, throughout her relationship with Father, she felt "humiliated" because she believed that Father was sexually involved with other women and that Father's conduct "drove [her] insane." Mother, sometimes pretending to be Father's sister, made multiple calls to Father's work, supervisor, and commanding officer to confirm that Father was at work. There were also times when Father would come home from work and find his belongings in the yard.

Father was deployed to Afghanistan in September 2018 and authorized Mother to use his credit card to pay for K.L.S.'s expenses while he was out of the country. While he was deployed, Father also paid for K.L.S.'s daycare, sent Mother money to assist with K.L.S.'s expenses, and bought things for K.L.S. Mother used the credit card to pay not only for K.L.S.'s expenses but for two different cosmetic surgeries. Although Mother paid the charges for one of the surgeries, she did not pay the charges for the second.

When Father returned from Afghanistan, Mother initially limited his access to K.L.S. to visits at Mother's home. The visits were "pretty much" conditioned on Father giving Mother money or buying something requested by Mother. Between February and March 2019, Mother allowed Father to have possession of K.L.S.

"almost full time," but begged him not to have other women around K.L.S. At some point, Mother sent a message to Father stating that she wanted to kill herself.

In February 2019, Mother attempted to kick in the door of Father's apartment while Father and K.L.S. were in the apartment. Father reported the incident to the police because he had concerns that Mother was demonstrating "the same psychotic behavior." Although Father testified that Mother did not come into the apartment during the February 2019 incident and that he did not have any physical interaction with Mother, Mother testified at a hearing before the associate judge that she came into the apartment and that Father pushed her down and slapped her. Mother also testified that she had lost the text messages in which Father invited her to his apartment that night.

According to Father, on March 17, 2019, Mother returned to his apartment, told him that he would not see K.L.S. again until after a court hearing, and began to load K.L.S.'s belongings into Mother's car. Mother found some condoms in Father's bedroom, demanded to know who Father had been with, and told Father that he was "never going to see her again."[2] Mother punched Father and threw a number of objects at him while he was holding K.L.S. When the police arrived, Mother talked to one of the officers. That officer arrested Father for assault family violence based on Mother's claim that Father had choked her. The grand jury later no-billed the charges.

On March 31, 2019, Mother slapped Father and assaulted a woman who was with him. Mother subsequently pled no contest to charges of assault family violence and assault. Mother slapped Father again on May 25, 2020, and accused him of stealing her car and her phone. At the time of the final hearing, the District Attorney had not pursued any charges against Father based on Mother's allegations.

_____

[2]The record is not clear as to whether Mother stated that Father would not see the other woman again or would not see K.L.S. again.

In temporary orders, the associate judge appointed Mother and Father as temporary joint managing conservators and gave Father the right to designate K.L.S.'s primary residence within Taylor County and contiguous counties. Mother had possession of K.L.S. pursuant to a standard possession order and was required to pay child support. Father noted that K.L.S.'s behavior deteriorated after she stayed with Mother for a lengthy period of time. According to Father, Mother coached K.L.S. to say during a change in possession that she wanted to remain with Mother. Father expressed concern that Mother would influence K.L.S. to say things against him.

Mother called the police to complain about Father on multiple occasions and made multiple allegations that Father had committed family violence. Father testified that he chose to separate from the military because "if [Mother] is going to allege . . .anything which could result in an investigation, if she is able to continuously harass my work center and . . . contacting my supervision and command like, . . . at any point, it could be career impacting." Father described Mother's behavior and mindset as "very toxic" and believed that it would be in K.L.S.'s best interest for Mother to be out of K.L.S.'s life. Father intended to move to Michigan with K.L.S. to complete his education, to allow K.L.S. to be around family, and to get away from Mother.

Although Mother failed to pay all the ordered child support, she took a vacation to California. An associate judge found that Mother violated the temporary orders (1) by consuming alcohol on three occasions within twelve hours of or during her possession of K.L.S.; (2) by allowing an unrelated person with whom she had an intimate relationship to be present on two occasions between the hours of 8:00 p.m. and 8:00 a.m. when she had possession of K.L.S.; (3) by failing to surrender K.L.S. to Father on two occasions; (4) by changing K.L.S.'s daycare without notifying Father; and (5) by failing to pay child support on four occasions.

During the hearings in this case, Mother made allegations of family violence against Father that progressively increased in both the number and the severity of events. Mother, however, was inconsistent as to when some of the alleged events occurred. Before the final hearing, Mother admitted to Father that she would say whatever she had to say to have a chance in court. According to Mother, she meant that she was going to tell the truth about everything that occurred between her and Father and that she was no longer going to protect Father.

Mother contended that she had not behaved erratically before she met Father and that "[her] DWI, [her] assault, all of that came with [Father]." According to Mother, her life had been "chaos" since she met Father and got pregnant and she had "not been the same person anymore." Mother stated that her allegations against Father were true. Mother did not testify about any specific plans that she had for K.L.S. or how she intended to provide a stable lifestyle for the child.

Again, although Mother and Father testified inconsistently with each other about a number of events, the trial court as the factfinder was the sole judge of their credibility and could choose to believe Father over Mother. We may not substitute our judgment for that of the trial court. *City of Keller*, 168 S.W.3d 802, 819 (Tex. 2005); *Qutiefan v. Safi*, No. 01-18-00425-CV, 2021 WL 3412174, at *9 (Tex. App.—Houston [1st Dist.] Aug. 5, 2021, no pet.) (mem. op.). The evidence was sufficient for the trial court to find that Father met K.L.S.'s emotional and physical needs, that Mother presented emotional or physical dangers to K.L.S., that Mother had a history of family violence against Father, that Father was able to care for K.L.S. and had a plan to do so, and that Father provided a stable home environment for K.L.S. Therefore, the trial court did not abuse its discretion when, based on that evidence, it appointed Father as K.L.S.'s sole managing conservator. We overrule Mother's first issue.

14

*D. Restrictions on Possession*

In her second issue, Mother asserts that the trial court abused its discretion when it deviated from the standard possession order and allowed Mother to have only limited visitation with K.L.S.[3]

The standard possession order is not designed to apply to a child who is less than three years of age. FAM. § 153.251(d). Rather, for children younger than three, the trial court must "render an order appropriate under the circumstances." *Id.* § 153.254(a). In doing so, the trial court is required to consider (1) the caregiving provided to the child before and during the current suit; (2) the effect on the child that may result from separation from either party; (3) the availability of the parties as caregivers and the willingness of the parties to personally care for the child; (4) the physical, medical, behavioral, and developmental needs of the child; (5) the physical, medical, emotional, economic, and social conditions of the parties; (6) the impact and influence of individuals, other than the parties, who will be present during periods of possession; (7) the presence of siblings during periods of possession; (8) the child's need to develop healthy attachments to both parents; (9) the child's need for continuity of routine; (10) the location and proximity of the residences of the parties; (11) the need for a temporary possession schedule that incrementally shifts to a standard possession order based on the age of the child or the minimal or inconsistent contact with the child by a party; (12) the ability of the

---

[3]Mother also argues that Father and K.L.S. have moved to Michigan, that she is required to travel to Michigan for each of her visits, that she has six other children and makes less than $40,000 per year, and that she can afford to visit K.L.S. only one time per month. However, Father testified during the final hearing that he intended to move to Michigan with K.L.S. Although Mother requested that the trial court order that K.L.S.'s primary residence be restricted to Texas, Mother did not argue that allowing Father to move to Michigan would impede her ability to exercise her possession of K.L.S. and has not challenged on appeal the trial court's decision to give Father the exclusive right to designate K.L.S.'s primary residence without a geographic restriction. Mother, therefore, has failed to preserve this complaint for our review. *See* TEX. R. APP. P. 47.1.

15

parties to share in the responsibilities, rights, and duties of parenting; and (13) any other evidence of the best interest of the child. *Id.*

A trial court is required to consider the commission of family violence in determining whether to deny, restrict, or limit the possession of a child by a parent who is appointed a possessory conservator. FAM. § 153.004(c). The trial court is statutorily prohibited from allowing a parent to have access to a child when it is shown by a preponderance of the evidence that there was a history or pattern of committing family violence during the two years preceding the date of the filing of the suit or during the pendency of the suit unless it:

> (1) finds that awarding the parent access to the child would not endanger the child's physical health or emotional welfare and would be in the best interest of the child; and
>
> (2) renders a possession order that is designed to protect the safety and well-being of the child and any other person who has been a victim of family violence committed by the parent.

*Id.* § 153.004(d)–(d-1)(1). The possession order may include a requirement (1) that the parent's period of possession be continuously supervised by an entity or person selected by the court, (2) that the exchange of possession of the child occur in a protective setting, (3) that the parent abstain from the consumption of alcohol or a controlled substance within twelve hours prior to or during the period of access to the child, or (4) that the parent attend and complete a battering intervention and prevention program. *Id.* § 153.004(d-1)(2). A trial court may not order restrictions on a parent's right of possession that "exceed those that are required to protect the best interest of the child." FAM. § 153.193. However, as relevant here, there is a rebuttable presumption that it is not in a child's best interest for a parent to have unsupervised visitation with the child if there is credible evidence of a history or pattern of family violence by that parent. *Id.* § 153.004(e)(1).

There was evidence that Father has been K.L.S.'s primary caretaker since June 2019 but that Mother cared for K.L.S. while K.L.S. was in her possession; that one of K.L.S.'s siblings was present during Mother's periods of possession; that Mother's behavior both before and after K.L.S.'s birth had been emotional and erratic; that K.L.S's behavior and intellectual development deteriorated when she was in Mother's care; that Mother had attempted to prevent K.L.S. from developing a healthy attachment to Father; that Father and K.L.S. would live in Michigan while Mother lived in Texas; and that Mother and Father were unable to share in the responsibilities, rights, and duties of parenting. Further, as discussed above, the evidence supported the trial court's implied finding of a history or pattern of family violence by Mother.

On the record before us, the trial court could have reasonably concluded that limiting Mother's periods of possession of K.L.S. and requiring those visits to be supervised while allowing Mother daily electronic access to K.L.S. were the minimal restrictions necessary to protect the safety and well-being of K.L.S. Because some evidence of a substantive and probative character supports the trial court's decision, the trial court did not abuse its considerable discretion when it determined that Mother should have access to K.L.S. for limited periods of time and that Mother's visitation with K.L.S. be supervised. *See Gillespie*, 644 S.W.2d at 451; *Ohendalski v. Ohendalski*, 203 S.W.3d 910, 915 (Tex. App.—Beaumont 2006, no pet.) (holding that the trial court did not abuse its discretion when it deviated from standard possession order based, in part, on a finding of family violence). We overrule Mother's second issue.

### E. Prospective Possession Order

In her fourth issue, Mother argues that the trial court erred when it did not render an order that addressed changes to custody and conservator status after K.L.S. turned three.

17

Section 153.254(d) of the Family Code provides that the trial court "shall render a prospective order to take effect on the child's third birthday, which presumptively will be the standard possession order." FAM. § 153.254(d). When the trial court orders terms of possession that deviate from the standard possession order, it must consider the guidelines established by the standard possession order and may consider the child's age, developmental status, circumstances, needs, and best interest; the conservators' circumstances; and "any other relevant factor." *Id.* § 153.256. The trial court may also place conditions on a parent's access, such as supervised visitation, if necessary for the child's best interest. *In re K.S.*, 492 S.W.3d 419, 429 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

Here, K.L.S. was two years and ten months' old when the trial court signed the final order. There was no evidence that the circumstances of the parties would change in the two months before K.L.S.'s third birthday, and the trial court ordered that the possession order would apply to K.L.S. "while that child is under the age of eighteen years and not otherwise emancipated." The trial court, therefore, rendered an order of possession that was applicable on K.L.S.'s third birthday. We overrule Mother's fourth issue.

*This Court's Ruling*

We affirm the trial court's order in suit affecting the parent–child relationship.


JOHN M. BAILEY
CHIEF JUSTICE


February 10, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.